# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CHEO D. MILES, )<br>)<br>Movant, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Civil No. 14-00823-CV-W-FJG<br>Crim. No. 09-00188-08-CR-W-FJG |

## ORDER

Currently pending before the Court is movant's motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Doc. # 1).

### I. BACKGROUND

On August 20, 2009, a superseding indictment was returned in the Western District of Missouri charging Miles with conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. 841(a)(1), (b)(1)(A) and 846. On February 14, 2011, Miles proceeded to a jury trial and was found guilty. On February 17, 2011, defense counsel Chris Angles filed a motion for a judgement of acquittal based on the single count in which Miles was charged. Following trial, Miles requested new counsel and his appointed counsel moved to withdraw. The Court granted Miles request and Susan Hunt was appointed as counsel. Hunt filed objections to the PSR drug calculations, challenging the factual elements of the findings, contesting the two-level enhancement for possession of a dangerous weapon and seeking minimal participant reduction under §3B1.2(b). On October 6, 2011, Miles appeared for sentencing. Hunt again objected to the drug quantity found by the jury verdict and requested that the Court lower the

quantity, notwithstanding the jury verdict. The Court denied that objection, but did sustain the objection to the two-level enhancement for a dangerous weapon and granted a two-level reduction for minimal participation. This resulted in a sentencing range of 140 to 175 months, but this was overridden by the statutory mandatory minimum of 240 months. Miles filed a direct appeal arguing that the district court failed to give a lesser included instruction for distribution of less than five kilograms of cocaine. The Eighth Circuit rejected this argument and affirmed his conviction and sentence. Miles has now filed the instant motion pursuant to 28 U.S.C. § 2255 asserting three claims of ineffective assistance of counsel: 1) counsel was ineffective for failing to request a lesser included offense instruction; 2) counsel was ineffective for failing to move for a judgment of acquittal and 3) counsel was ineffective for failing to object to the drug quantity determination by the district court.

## II. STANDARD

28 U.S.C. § 2255 provides, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The district court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. "Accordingly, a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Shaw v. United States, 24 F.3d 1040, 1043

(8th Cir. 1994) (citing <u>Larson v. United States</u>, 905 F.2d 218, 220-21 (8th Cir. 1990), <u>cert. denied</u>, 507 U.S. 919, 113 S.Ct. 1278, 122 L.Ed.2d 672 (1993)).

Our analysis of the ineffectiveness claims is governed by <u>Strickland v. Washington</u>, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to succeed on an ineffectiveness claim, Miles must show "both deficient performance by counsel and prejudice." <u>Id</u>. at 687-88. In <u>Johnson v. U.S.</u>, 860 F.Supp.2d 663 (N.D.Iowa 2012), the Court stated:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>]*,* 466 U.S. at 688, 104 S.Ct. 2052. . . . The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>*.,* at 687, 104 S.Ct. 2052. <u>Harrington v. Richter</u>*,* 562 U.S. 86, 104, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011); <u>Premo v. Moore</u>*,* 562 U.S. 115, 121-122, 131 S.Ct. 733, 739, 178 L.Ed.2d 649 (2011) (quoting <u>Richter</u>). Also, the court " 'must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." ' " <u>King [v. United States</u>,595 F.3d 844,] 852–53 (quoting <u>Ruff v. Armontrout</u>*,* 77 F.3d 265, 268 (8th Cir.1996), in turn quoting <u>Strickland</u>*,* 466 U.S. at 690, 104 S.Ct. 2052). There are two substantial impediments to making the required showing of deficient performance. First, " '[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' " <u>United States v. Rice</u>*,* 449 F.3d 887, 897 (8th Cir.2006) (quoting <u>Strickland,</u> 466 U.S. at 690, 104 S.Ct. 2052). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " <u>Id</u>. (quoting <u>Strickland,</u> 466 U.S. at 689, 104 S.Ct. 2052; <u>Davis v. Norris</u>*,* 423 F.3d 868, 877 (8th Cir.2005) ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance.")

<u>Id</u>. at 741. In <u>United States v. Orr</u>, 636 F.3d 944 (8th Cir.) <u>cert</u>. <u>denied</u>, 132 S.Ct. 758 (2011), the Court stated, "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the

3

extent that reasonable professional judgments support the limitations on investigation." Id. at 952 (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052). However, as noted in Armstrong v. Kemna, 534 F.3d 857 (8th Cir. 2008), "[o]n the other hand, strategic choices resulting from lack of diligence in preparation and investigation [are] not protected by the presumption in favor of counsel." Id. at 864-65 (internal citations and quotations omitted).

### III. DISCUSSION

#### A. Ground 1 – Failing to Request a Lesser Included Offense Instruction

Miles argues that Alejandro Corredor testified that he accepted delivery of one kilogram of cocaine and payment in the sum of $19,000 as well as a payment in the amount of $17,000. Miles argues that Corredor testified that in 2008, a kilogram of cocaine sold for between $22,000 and $24,000. Thus, adding the two payments together would only equal one kilogram of cocaine. Miles argues that if his counsel had requested that the jury be instructed on the lesser included offense of conspiracy to distribute less than five kilograms of cocaine, then the outcome of his trial would have been different.

The Government argues that to demonstrate prejudice, Miles must show a reasonable probability that the district court would have given the instruction and that the jury would have acquitted him of the greater offense and convicted him of the lesser offense. The Government argues that the district court found that there was ample evidence to support the jury's verdict that Miles was responsible for distribution of five kilograms or more of cocaine.

> THE COURT: Well, I'm going to overrule the objection. First of all, I have
> a great deal of faith in juries, and I believe that they were properly

4

> instructed. And to find him guilty, they had to find that he was involved voluntarily in a conspiracy that involved more than five kilograms. And at a minimum we've got rock solid evidence, I believe, that you've got at least four kilos, giving every benefit of the doubt to Mr. Miles, that there are a minimum of four occasions. Now, maybe one of those four involves the two telephone calls, so I've got to be careful not to double count. But he's not just responsible for what he, in fact, himself can be shown to have given under these facts; and given that amount of involvement, I have no doubt that he was fully aware that there was substantially more than four kilograms that was involved in this conspiracy.
>
> And so I am, I do find that the jury's verdict is well supported by the evidence, and so I will go with that. And so I will overrule it.

(Doc. # 684, Oct. 6, 2011 Sentencing Transcript, p. 9). The Government argues that in light of the jury's verdict, Miles cannot demonstrate a reasonable probability that he would have been acquitted of the greater charge. Additionally, the Government argues that the record demonstrates that the Court would not have given the instruction, even if counsel had requested it.

In U.S. v. Ziesman, 409 F.3d 941 (8th Cir.) cert. denied, 546 U.S. 990, 126 S.Ct. 579, 163 L.Ed.2d 483 (2005) the Court stated:

> [i]n the Eighth Circuit, a defendant is entitled to a lesser-included offense instruction when: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of a lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or defense.

Id. at 949.

In this case, Corredor testified that he knew Miles through Adrian Dunn. Corredor testified that Adrian Dunn sold approximately eight kilos a month for him and that Miles was a childhood friend of Dunn's who was always with Dunn and lived in a

5

house which Dunn owned.

Q. And how do you know Cheo Miles?
A. Knew him through AD.
Q. How do you know him through Adrian Dunn?
A. He was always with him and sometimes when I delivered the drugs to pick up the money, he would be the one giving me, receiving the drugs or giving me the money.
Q. How often would Cheo Miles do that, how often would he take cocaine from you?
A. Altogether probably four or five times.
Q. And as far as the money goes, how often would you deal with him with money?
A. About four or five times.

(Doc. # 554, pp.35-36).

Corredor later testified after listening to a recorded conversation:

Q. Can you explain this conversation to the jury, what are you talking to Adrian Dunn about?
A. That I was coming to his house to bring him that kilo.
Q. And when Mr. Dunn says he's waiting for you, what does that tell you?
A. He's telling me that Cheo is waiting for me.

(Doc. # 554, p. 70).

Corredor also testified that he recognized the voice on the tape as that of Cheo Miles.

(Doc. # 554, p. 70-71). Corredor also testified after listening to another recorded

conversation:

Q. Okay. What's the substance of that particular phone call, what are you telling Mr. Dunn?
A. He was sending Cheo to Zeno's house to drop money for me.

(Doc. # 554, p. 77). Mr. Corredor also testified after listening to another recorded

conversation:

Q. All right, Mr. Corredor, just a couple of things I wanted to ask you about this particular phone call. At the very beginning of the phone call, what is Mr. Dunn telling you is going on?
A. First he said he give me 17,000.
Q. And how did that take place?
A. That was what Cheo had left at Zeno house.

(Doc. # 554, p. 79). Corredor also testified that he received three loads of cocaine from

6

his source in Mexico that were approximately 45 to 50 kilos each.  He testified that his last load came in January 2009. (Doc. # 554, p. 22).  Corredor also testified that Adrian Dunn sold drugs for him since 2007 and in a given month, Adrian Dunn would sell approximately eight kilos a month for him. (Doc. # 554, p. 31).

"A defendant is entitled to an instruction on a lesser included offense if the evidence would permit a rational jury to find him guilty of the lesser offense and acquit him of the greater." Molsbarger v. U.S., No. 2:07-CR-16, 2010 WL 3811888 (D.N.D. Sept. 27, 2010).  In that case, the defendant argued that his counsel was ineffective for failing to request a lesser included instruction on "simple possession."  However, after reviewing the evidence the Court determined that based on the evidence of the amount of drugs and money which were recovered, "a rational jury could not acquit Molsbarger of possession with intent to distribute and convict him of simple possession. Thus, even assuming Molsbarger's attorney should have requested the lesser included instruction, the facts of the case would not have warranted the instruction and, therefore, Molsbarger cannot show prejudice." Id. at *3. The Court rejected movant's claim that his attorney was ineffective for failing to request the instruction.

Similarly, in the instant case, the Court finds that based on the testimony regarding the amount of drugs that were involved in this conspiracy and Miles involvement in the conspiracy, no rational jury could have found that Miles was guilty of conspiring to distribute less than five kilograms of cocaine.  Accordingly, the Court finds that Miles counsel was not ineffective for failing to request such an instruction, because it was not warranted by the evidence.  Accordingly, the Court hereby **DENIES** Miles' claim for relief on Ground One.

7

## B. Ground 2 - Ineffective Assistance of Counsel – Trial Counsel Failed to Move For Judgement of Acquittal

Miles argues that his trial counsel failed to move for a judgment of acquittal at the close of the Government's case. He also argues that there was insufficient evidence of his involvement with this conspiracy and that the testimony of Corredor was insufficient. However, the record demonstrates that trial counsel Chris Angles did file a Motion for a Judgment of Acquittal at the close of all the evidence.

THE COURT: Then I can go ahead and make a record as to whether these defendants are going to testify at this time. Is there anything else that the defendants wish to bring to my attention ?
MR. ANGLES: Can I have a second, Judge?
(A discussion was had off the record among defense counsel).
MR. ANGLES: Judge, on ECF I filed a motion for judgment of acquittal at the close of all of the evidence. I don't know if you want to take that up now.
THE COURT: Okay. That's what I was wondering whether anybody was doing.
MS. ROKUSEK: Danny Moore would join that motion, Your Honor.
MR. O'CONNOR: Vincent Charles would join that motion at the close of the government's evidence. Your Honor.
MS. BLEGEN: And Adrian Dunn also joins that motion, Your Honor.
MR. LAMB: As does the Defendant Westbrook.
THE COURT: All right. I'm going to deny the motion.

(Doc. # 676, p. 781).

The docket sheet reflects that on February 17, 2011, counsel filed Doc. # 514 – Defendant Miles' Motion for Judgement of Acquittal At the Close of All the Evidence. The Motion argues that the Government failed to prove the elements of the crime alleged in the information and also argues that the evidence is insufficient as a matter of law to support a finding of guilt. However, as noted above, the trial Court denied this motion.

Miles also argues that he was convicted primarily on the testimony of Corredor and that Corredor testified that Adrian Dunn sold on average eight kilograms of cocaine

8

per month. Miles argues that based on Corredor's testimony, the jury may have erroneously determined that he was responsible for this amount as well. On direct appeal, Dunn, Moore and Charles raised this argument and stated that only Corredor's testimony supported their convictions because the government had presented no evidence that law enforcement agents directly observed their involvement in the drug related activity. However, the Eighth Circuit rejected this argument, stating, "We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." U.S.v. Dunn, 723 F.3d 919, 925 (8th Cir. 2013), cert. denied 134 S.Ct. 945, 187 L.Ed.2d 811(2014) (quoting United States v. Coleman, 525 F.3d 665,666 (8th Cir.), cert. denied, 555 U.S. 958, 129 S.Ct. 430, 172 L.Ed.2d 311 (2008)). In the instant case, the trial court considered the motion for judgement of acquittal at the close of all the evidence, but found that there was sufficient evidence presented regarding defendant Miles, and therefore denied the motion. Miles has failed to show how his counsel's performance was deficient, as the motion was filed at the close of all the evidence. Accordingly, the Court hereby **DENIES** Miles motion for relief on GroundTwo.

### C. Ground 3 - Ineffective Assistance of Counsel – Failure to Object to District Court's Approximation of Drug Quantity.

Miles argues that his replacement counsel, Susan Hunt, provided him ineffective assistance by failing to object to the Court's drug quantity calculation. Miles argues that the court's determination was based in part on the price range generally obtained for the controlled substances which was taken from Corredor's testimony. Miles argues that the record shows that his involvement was for the acceptance and delivery of one kilogram

9

and it was error for the court to find that he was responsible for more. Miles argues that Corredor testified that in 2008, a kilogram of cocaine went for between $23,000 to $24,000, so even aggregating the amounts together show that he was responsible for less than five kilograms. If Hunt had reviewed any of the records regarding this issue, she would have become aware that the estimate used by the trial court was incorrect.

The Government argues in opposition that Hunt did object to the drug quantity, arguing that it was below the amount necessary to support the jury's verdict. During the sentencing hearing the Court asked for the parties' positions on drug quantities:

> THE COURT: Let's go ahead then and address the issue of the quantities of drugs.
>
> MS. HUNT: Okay. I've outlined in the objections basically the only evidence against Mr. Miles in this case was through Dunn. Corredor talked to Dunn quite a bit. And Dunn would say he's going to deliver this money over to Z's house. And I think this phone call occurred on April 29th, 2009. I didn't try the case, but I read the transcripts, though. Basically they talked about $1,700 – or $17,000, I'm sorry, that was going to be delivered from Dunn to Corredor. It was Dunn's money. Apparently payment for some cocaine. and he said, I'm going to send Cheo over to Z's house to drop the money off, which he does, and we admit that, and the money was dropped off. Well, if you look at the testimony of Corredor, he's charging about $26,000 per kilo to Dunn and other people that he would sell it to who would then sell it resale. So $17,000 doesn't even pay for one kilo. It's less than a kilo. There's also some talk about another kilo. The probation office when they denied my objections basically said every transaction involved two kilos. Well, $17,000 is not two. And Corredor testified in trial and then in this phone call, through a series of phone calls that he's not going to give Dunn any more than one kilo at a time because Dunn owes him money and hasn't paid him, and he owes him a lot of money and he's not going to give him any more than that. So I don't know how they come up with every transaction involves two. I think the most you can find is the one kilo they talk about. And I think it's unclear that my client was even involved in that, but let's say he is. Then you've got the $17,000. That's two kilos at the most. So you can't get over five on the government's evidence. . . . There's no evidence that Mr. Miles was out distributing things. There's no evidence he's making any money from this. There's no evidence about anything. He's just basically a flunky for Dunn and doing his dirty work running these errands. Of course, that's why

10

probation did give me the two-level minor role. And I think that's justified in this case. But I also think you can't get above five kilos which makes a difference because that's where you start the mandatory minimum. That's my argument.

(Doc. # 684, Sentencing Transcript, pp. 3-4).

When asked how she would respond to Corredor's testimony that he dealt with Cheo Miles four to five times, Hunt stated:

MS. HUNT: It was the summary fashion, but then when he went into specific instances of what happened, he didn't testify to four or five specific instances. It's like he got up there in the very beginning of his testimony and he said how many times and he said it was four or five. Let's say it's four times and one kilo, we're still under five. I think it's a very, very close call in this case. The specific instances that he did talk about, we don't even get to two kilos. So I would ask the court to rule it's under five and go with the lower statutory mandatory – I mean, I think he's getting probably a higher sentence than people who were more involved because of the mandatory minimums and the 851.

(Doc. # 684, Sentencing Transcript, p. 8).

Despite Hunt's argument, the Court denied the objection, finding that "we've got rock solid evidence, I believe, that you've got at least four kilos, giving every benefit of the doubt to Mr. Miles, that there are a minimum of four occasions. . . .But he's not just responsible for what he, in fact, himself can be shown to have given under these facts; and given that amount of involvement, I have no doubt that he was fully aware that there was substantially more than four kilograms that was involved in this conspiracy." (Doc. # 684, Sentencing Transcript, p. 9). The Government argues that because counsel presented arguments relating to drug quantity, there was no ineffective assistance and Miles cannot demonstrate prejudice because he cannot show that there is a reasonable probability that the outcome of the proceeding would have been altered. Additionally, the Government notes that Miles' arguments regarding the trial Court's drug quantity calculations cannot be raised in a §2255 motion. The Government argues

11

that "Miles essentially desires to relitigate his sentence and is using ineffective assistance of counsel as a pretense to relitigate that issue." (Government's Suggestions in Opposition, p. 12). In reply, Miles argues that on appeal Hunt did not raise or pursue any issues contesting the District Court's approximation of drug quantity. However, this is incorrect. As discussed above, on direct appeal Miles's counsel argued that the district court committed plain error when it failed to instruct the jury on the lesser included offense of conspiring to distribute less than 5 kilograms of cocaine. Additionally, the Eighth Circuit noted:

> Prior to the Supreme Court's recent decision in Alleyne v. United States, _U.S._, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), Miles's lesser-included-offense argument was "practically irrelevant" because we construed prior Supreme Court decisions as permitting the district court to impose any sentence within the statutory maximum based on the court's drug quantity finding made by a preponderance-of-the-evidence at sentencing. See e.g., United States v. Turner, 603 F.3d 468,471 (8th Cir. 2010). Consistent with those then-controlling decisions, *at oral argument, Miles's counsel agreed this was in essence a sentencing issue and argued the district court impermissibly considered itself bound at sentencing by the jury's quantity finding.*

U.S. v. Dunn, 723 F.3d at 931-32 (emphasis added). The Eighth Circuit however disagreed with that argument, stating:

> We reject this contention. In our view, the sentencing transcript demonstrates that the court understood its sentencing authority and simply adopted the jury's drug quantity finding, which was well supported by the trial record.

Id. at 932.

Thus, the Court finds that Miles has not demonstrated that Hunt's performance was deficient, as she challenged the court's drug quantity calculations at both the sentencing hearing and also on direct appeal. Accordingly, the Court hereby **DENIES** Miles's claim for relief on Ground Three.

12

## IV. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Miles's Motion to Vacate, Set Aside or Correct His Sentence on all grounds. No evidentiary hearing will be held in this matter because the issues raised are resolvable by the record. Furthermore, movant will be denied a motion for certificate of appealability. Under 28 U.S.C. § 2253(c)(2), "[a] certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." The Court finds that the issues raised by movant do not meet this criteria.

Date: September 8, 2016  **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri  Fernando J. Gaitan, Jr.
United States District Judge